**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**


ALLEN O'NEIL FITZGERALD,        )
a/k/a ALLEN O'NEIL BALTIMORE,   )    Civil Action No. 09 -1379
                                 )
            Petitioner,        )    Magistrate Judge Lisa Pupo Lenihan
                                 )
v.                                 )
                                 )
SUPERINTENDENT MICHAEL       )
KLOPOTOSKI; THE DISTRICT ATTORNEY )
OF THE COUNTY OF ALLEGHENY; and THE )
ATTORNEY GENERAL OF THE STATE OF )
PENNSYLVANIA,             )
                                 )
           Respondents.     )


## <u>MEMORANDUM OPINION AND ORDER</u>

Petitioner, Allen O'Neil Fitzgerald, a/k/a Allen O'Neil Baltimore, a state prisoner incarcerated at the State Correctional Institution at Dallas, Pennsylvania, has petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons that follow, the Petition will be denied.

### A. Relevant Factual and Procedural History

In this Petition, Petitioner attacks his convictions of robbery, receiving stolen property, and conspiracy. The crimes stemmed from the following facts as testified to at the trial. On November 18, 2001, Franz Greer and his girlfriend, Tenika Jones went to Best Video on Ohio Street on the north side of the City of Pittsburgh. They were accompanied by Ms. Jones' sister, Shelna Jones, who went into the Isaly's store next to the video store. Upon exiting the video store, a man later identified as Lamar Williams approached them and asked if they wanted to buy a camera. As they

were discussing the purchase of the camera, Petitioner approached Mr. Greer from behind, stuck a gun into his side and told him to "kick it." At that point, Fitzgerald and Williams stripped Mr. Greer of his jewelry consisting of a gold necklace and four diamond rings, his wallet containing approximately $64 in cash and his cell phone. The assailants then fled in a Pontiac Grand Am.

Mr. Greer got into his vehicle and pursued the assailants. While doing so, he passed a police vehicle, which he flagged down. He informed the police that he had been robbed and the police began pursuing the Grand Am. The assailants continued to flee and a high speed chase ensued for several minutes throughout downtown Pittsburgh. The police lost sight of the vehicle when their car stalled, but discovered it a short distance away. The vehicle, which was still running, had been abandoned with the doors open in front of an apartment building in the Hill District of the City. A person at the scene told the police that he observed two persons run into the apartment building. The police knocked on the door and a tenant permitted them to enter the premises. After searching the first floor apartment, which was empty, they proceeded to the second floor apartment where they found the assailants hiding in separate closets in opposite bedrooms. A search of the area revealed the stolen money and jewelry.

On October 8, 2002, a joint jury trial for Petitioner and co-defendant Williams commenced before the Honorable Lawrence J. O'Toole in the Court of Common Pleas of Allegheny County, Pennsylvania. On October 10, 2002, Petitioner and Williams were found guilty of all charges. On January 2, 2003, Petitioner was sentenced to an aggregate term of incarceration of from twenty-five (25) to fifty (50) years for his convictions of robbery, receiving stolen property, and conspiracy. On January 10, 2003, Petitioner filed post-sentence motions, alleging that the evidence was insufficient to prove robbery and that the sentence was illegal. On May 22, 2003, the Petitioner's post-sentence motions were denied by operation of law.

Following the reinstatement of his direct appeal rights, Petitioner's appointed counsel filed Concise Statements of Matters Complained of on Appeal. On April 7, 2004, the trial court rendered an Opinion addressing and denying Petitioner's Concise Statements (ECF No. 17-2, pp. 27-35). Petitioner, filed a Brief in support of his appeal with the Superior Court of Pennsylvania wherein he raised the following claims (ECF No. 17-3).

1.  Appellant is entitled to a new trial because his Pa. Const. Art. I §§ 6 and 9 and U.S. Const. Amend. VI and XIV jury trial and due process rights, as well as his Pa. R. Crim. P. 601A and 631(a) procedural rights were violated when the jury selection phase of his trial was conducted without a judge presiding over that hearing and without that hearing being recorded – structural defects in the Constitution of the trial mechanism for which prejudice is irrefutably presumed.

2.  Appellant is entitled to a new trial because his Pa. Const. Art. I § 9 and U.S. Const. Amend. VI and XIV effective counsel and due process rights were violated when trial counsel rendered ineffective assistance, discernable from the record via his failure to object to the trial judge authorizing an unrecorded extrajudicial jury selection hearing without first having secured a valid waiver from Appellant of his right to have a judge preside at such a hearing and to have the proceedings recorded.

3.  Appellant is entitled to relief because his Pa. Const. Art. I § 9 and U.S. Const. Amend. VI and XIV effective counsel and due process rights were violated when trial counsel ineffectively failed (a) to seek to have Appellant's prior Robbery conviction referred to as a "crime of dishonesty"; (b) to seek an immediate cautionary instruction upon disclosure of defendant's past conviction; and (c) to object to a final instruction telling the jurors that they could consider the "type of crime previously committed" by defendant.

ECF No. 17-3, p. 2.

On June 21, 2005, the Superior Court of Pennsylvania affirmed Petitioner's judgment of sentence (ECF No. 17-5, pp. 29-33). Petitioner filed a timely petition for allowance of appeal to the Supreme Court of Pennsylvania, which was denied by that Court on June 6, 2006. Petitioner filed

a timely petition for certiorari with the United States Supreme Court, which was denied on January 8, 2007

On March 29, 2007, Petitioner filed a *pro se* PCRA Petition. Thereafter appointed counsel filed an Amended PCRA petition on Petitioner's behalf raising the following issue.

> Trial counsel was ineffective for failing to object to the absence of a judge and stenographer at the jury selection phase of trial.

On February 21, 2008, the trial court issued an Order dismissing Petitioner's PCRA Petition as meritless. Petitioner filed a Notice of Appeal to the Superior Court of Pennsylvania and on December 30, 2008, the Superior Court of Pennsylvania affirmed the trial court's order denying Petitioner's PCRA petition. Petitioner's timely Petition for Allowance of Appeal to the Pennsylvania Supreme Court was denied on August 20, 2009.

On October 14, 2009, Petitioner filed a *pro se* Petition for Writ of Habeas Corpus in this Court raising four claims. Respondent filed their Answer on December 22, 2009 (ECF No. 15). Petitioner then filed an Amended Petition raising only two of his four claims (ECF No. 23). First, Petitioner states that he is entitled to habeas corpus relief because his jury trial, due process, and procedural rights were violated when he was convicted by a jury that was selected at a "judgeless", "recordless", jury selection hearing when he did not specifically waive his rights to such during a waiver colloquy. Second, Petitioner states that he is entitled to relief because his Sixth Amendment effective counsel rights and Fourteenth Amendment Due Process rights were violated when his attorney ineffectively failed to object to a "judgeless", "recordless" jury selection hearing absent Petitioner's voluntary, knowing, and intelligent consent to such a proceeding. Respondent filed a Second Answer on May 27, 2010 (ECF No. 28) wherein it noted that these claims were included in

Petitioner's first habeas corpus petition and were addressed by Respondent in its original answer. The Petition is ripe for review.

## B. Standards Governing Federal Habeas Corpus Review

1.    Exhaustion Requirement

The provisions of the federal habeas corpus statute at 28 U.S.C. § 2254(b) require a state prisoner to exhaust available state court remedies before seeking federal habeas corpus relief.  To comply with the exhaustion requirement, a state prisoner first must have fairly presented his constitutional and federal law issues to the state courts through direct appeal, collateral review, state *habeas* proceedings, *mandamus* proceedings, or other available procedures for judicial review.  *See, e.g.*, Castille v. Peoples, 489 U.S. 346, 351 (1989); Doctor v. Walters, 96 F.3d 675, 678 (3d Cir. 1996); Burkett v. Love, 89 F.3d 135, 137 (3d Cir. 1996).  Moreover, a petitioner must present every claim raised in the federal petition to the state's trial court, intermediate appellate court and highest court before exhaustion will be considered satisfied.  O'Sullivan v. Boerckel, 526 U.S. 838 (1999). The petitioner has the burden of establishing that exhaustion has been satisfied.  Ross v. Petsock, 868 F.2d 639, 643 (3d Cir. 1989); O'Halloran v. Ryan, 835 F.2d 506, 508 (3d Cir. 1987).

Exhaustion is not a jurisdictional limitation, however, and federal courts may review the merits of a state petitioner's claims prior to exhaustion when no appropriate state remedy exists. Christy v. Horn, 115 F.3d 201, 206 (3d Cir. 1997); Doctor, 96 F.3d at 681; Carter v. Vaughn, 62 F.3d 591, 594 (3d Cir. 1995).  A petitioner shall not be deemed to have exhausted state remedies, however, if he has the right to raise his claims by any available state procedure.  28 U.S.C. § 2254(c).

An application for a writ of habeas corpus may be denied on the merits, however, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State. 28 U.S.C. § 2254(b)(2).

Here, Petitioner raised his claims on direct review and in his PCRA proceeding. Thus, his claims are "exhausted" for purposes of federal court review.

2.      Standard of Review

In describing the role of federal habeas proceedings, the Supreme Court of the United States, in Barefoot v. Estelle, 463 U.S. 880, 887 (1983), noted:

> [I]t must be remembered that direct appeal is the primary avenue for review of a conviction or sentence.... The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited. Federal courts are not forums in which to relitigate state trials.

In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214, April 24, 1996, (AEDPA), which further "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

Amended Section 2254 of the federal habeas corpus statute provides the standard of review for federal court review of state court criminal determinations and provides, in relevant part, as follows:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C.§ 2254(d).

"A state-court decision is 'contrary to' clearly established federal law if the state court (1) 'contradicts the governing law set forth in [the Supreme] Court's cases' or (2) 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a [different] result.'" Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir.2004) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).  Few state court decisions will be "contrary to" Supreme Court precedent.  "Clearly established Federal law" should be determined as of the date of the relevant state-court decision.  Greene v. Palakovich, Civil No. 07-2163, 2010 WL 2134575 (3d Cir. May 28, 2010).

The federal habeas court more often must determine whether the state court adjudication was an "unreasonable application" of Supreme Court precedent.  "A state-court decision 'involve[s] an unreasonable application' of clearly established federal law if the state court (1) 'identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular … case'; or (2) 'unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'"  Id. (quoting Williams, 529 U.S. at 407).

A recent decision of the Supreme Court illustrates the deference that the federal courts must accord to state court decisions.  In Renico v. Lett, ___ U.S. ___, 130 S.Ct. 1855 (May 3, 2010), the Supreme Court reviewed the Court of Appeals for the Sixth Circuit's grant of a writ of habeas corpus

to a defendant who was retried for murder following the trial judge's grant of a mistrial after the jury had deliberated for at least four hours following a relatively short, and far from complex, trial. The Michigan Supreme Court had concluded there was no violation of the Double Jeopardy Clause because the trial court exercised its sound discretion. The federal district court granted a writ of habeas corpus and the Sixth Circuit affirmed, both concluding that the trial court's declaration of a mistrial constituted an abuse of discretion because there was no manifest necessity. The Supreme Court reversed.

> It is important at the outset to define the question before us. That question is not whether the trial judge should have declared a mistrial. It is not even whether it was an abuse of discretion for her to have done so-the applicable standard on direct review. The question under AEDPA is instead whether the determination of the Michigan Supreme Court that there was no abuse of discretion was "an unreasonable application of ... clearly established Federal law." § 2254(d)(1).

Lett, 130 S.Ct. at 1862. The Supreme Court further instructed:

> It is not necessary for us to decide whether the Michigan Supreme Court's decision - or, for that matter, the trial judge's declaration of a mistrial - was right or wrong. The latter question, in particular, is a close one. As Lett points out, at a hearing before the Michigan Court of Appeals, the state prosecutor expressed the view that the judge had in fact erred in dismissing the jury and declaring a mistrial. The Michigan Supreme Court declined to accept this confession of error, People v. Lett, 463 Mich. 939, 620 N.W.2d 855 (2000), and in any event - for the reasons we have explained - **whether the trial judge was right or wrong is not the pertinent question under AEDPA.**

Id. at 1865, n. 3 (emphasis added).

Moreover, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e). Where a state court's factual findings are not made explicit, a federal court's "duty is to begin with

the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it." <u>Campbell v. Vaughn</u>, 209 F.3d 280, 289 (3d Cir. 2000). In determining what implicit factual findings a state court made in reaching a conclusion, a federal court must infer that the state court applied federal law correctly. *Id.* (citing <u>Marshall v. Lonberger</u>, 459 U.S. 422, 433 (1982)). Where the state court fails to adjudicate or address the merits of a petitioner's claims, unless procedurally defaulted, the federal habeas court must conduct a *de novo* review over pure legal questions and mixed questions of law and fact. <u>Appel v. Horn</u>, 250 F.3d 203, 210 (3d Cir. 2001). Petitioner's claims will be reviewed in accordance with the standards set forth above.

## C. Jury Selection Process

Petitioner's first claim relates to the operation of Pa. R. Crim. Proc. 631(A), which provides that jury *voir dire* shall be conducted by a judge unless the judge's presence is waived by the defendant, the Commonwealth, and defense counsel. As provided by this rule, Petitioner, his defense counsel, and the district attorney executed a document waiving the presence of a judge and reporter during jury selection. Petitioner contends that his waiver was not voluntary, knowing and intelligent because the judge did not conduct a colloquy to ensure that he knew he was relinquishing important rights. Thus, he asserts that a structural error occurred such that the Court should assume prejudice.

A state prisoner like Petitioner may not be granted federal habeas corpus relief unless he demonstrates that he is in custody in violation of the United States Constitution or federal law. *See* 28 U.S.C. § 2254(a). *See also* <u>Smith v. Phillips</u>, 455 U.S. 209 (1982); <u>Geschwendt v. Ryan</u>, 967 F.2d 877 (3d Cir.), *cert. denied*, 506 U.S. 977 (1992); <u>Zettlemoyer v. Fulcomer</u>, 923 F.2d 284 (3d Cir.), *cert. denied*, 502 U.S. 902 (1991). Mere violations of state law or procedural rules cannot

provide the basis for federal habeas relief absent a deprivation of constitutional magnitude. Engle v. Isaac, 456 U.S. 107 (1982); Wells v. Petsock, 941 F.2d 253 (3d Cir. 1991), *cert. denied*, 505 U.S. 1223 (1992). *See also* Estelle v. McGuire, 502 U.S. 62, 72 (1991); Cupp v. Naughten, 414 U.S. 141, 146-47 (1973). Thus, in order for Petitioner to be entitled to relief with respect to this claim, he must demonstrate that he had a constitutional right to have his jury *voir dire* conducted before a judge and recorded by a court reporter.

A criminal defendant has a federal constitutional right, under the Confrontation Clause of the Sixth Amendment and the Due Process Clauses of the Fifth and Fourteenth Amendments, "to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings." Faretta v. California, 422 U.S. 806, 819-20 n. 15 (1975). It is well-established that the impaneling of the jury is one such stage. Gomez v. United States, 490 U.S. 858, 873 (1989); *see also* Fed. R. Crim. P. 43(a) (stating that the defendant shall be present "at every stage of the trial including the impaneling of the jury"). Here, there is no question that Petitioner was present at his jury *voir dire*. The question becomes, then, whether the United States Constitution guarantees criminal defendants the presence of a judge and/or court reporter during jury selection.

There is no such right explicitly set forth in the United States Constitution. Nor has the Supreme Court recognized such a right. *See* Peretz v. United States., 501 U.S. 923, 936 (1991) ("As we have already noted, it is arguable that a defendant in a criminal trial has a constitutional right to demand the presence of an Article III judge at *voir dire*."). The Peretz Court expressly refrained from deciding whether a felony defendant has a constitutional right to demand the presence of an Article III judge at *voir dire*. The Court did not reach that question because it determined that "a defendant has no constitutional right to have an Article III judge preside at jury selection if the defendant has raised no objection to the judge's absence." *Id*. The Court explained that, even if such

a right existed, the most basic rights of criminal defendants are similarly subject to waiver.  Peretz,

501 U.S. at 936-37 (citing cases).  The Court made clear that "waiver" in this context means "the

failure to make timely assertion of the right." *Id.* (quoting Yakus v. United States, 321 U.S. 414, 444

(1944)).  In this respect, a defendant's "right" to object to jury selection by a magistrate judge is

similar to any other "right" to object that the defendant may have, which is lost if not asserted.  For

example, although a defendant may have a "right" to object to the admission of evidence, counsel

may choose, for tactical reasons, not to object.  Unless the failure to object rises to the level of

ineffective assistance, it is binding upon the defendant and precludes any subsequent claim that the

evidence was improperly received.  *See* New York v. Hill, 528 U.S. 110 (2000) (holding that, absent

ineffectiveness of counsel, counsel's tactical decisions at trial bind defendant).  Thus, it is incumbent

upon the defendant to object and a failure to object bars the defendant from later challenging the

empanelment on that ground.  Peretz, 501 U.S. at 937.

In Gonzales v. United States, 553 U.S. 242 (2008), the Supreme court further clarified that

counsel's consent sufficed to waive a defendant's right to have an Article III judge preside over jury

selection, even if the defendant was unaware that a right was being discussed or waived.  Gonzales

was a Mexican citizen who spoke only Spanish.  He was charged in the District Court for the

Southern District of Texas with conspiracy to possess with the intent to distribute over 1000

kilograms of marijuana.  Prior to jury selection, Gonzalez appeared before the court on six

occasions--twice before Magistrate Judge Arce-Flores and four times before District Judge Kazen.

At the end of the pretrial conference sequence, Magistrate Judge Arce-Flores, conducting the

proceedings in English, asked the parties if they consented to having a magistrate judge preside over

jury selection.  Gonzalez's attorney and the state's counsel consented, but Gonzalez was not asked

directly to respond to the question.  Magistrate Judge Arce-Flores then asked Gonzalez's attorney

whether Gonzalez needed a translator, an offer that he accepted. The magistrate judge then supervised the *voir dire* and the District Judge Duplantier presided over the trial. Following his conviction, Gonzalez appealed claiming that the delegation of *voir dire* to the magistrate judge without his express, personal consent was erroneous.

The United States Court of Appeals for the Fifth Circuit affirmed Gonzalez's conviction holding that a felony defendant's right to have a district judge conduct *voir dire* may be waived through the consent of counsel, thus permitting a magistrate to preside over jury selection. The Supreme Court affirmed. In so ruling, the Court emphasized the following

> What suffices for waiver depends on the nature of the right at issue. Whether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake. For certain fundamental rights [right to counsel] [right to plead not guilty], the defendant must personally make an informed waiver. For other rights, however, waiver may be effected by action of counsel. Although there are basic rights that the attorney cannot waive without the fully informed and publicly acknowledged consent of the client, the lawyer has-and must have-full authority to manage the conduct of the trial. ... [D]ecisions by counsel are generally given effect as to what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence. Absent a demonstration of ineffectiveness, counsel's word on such matters is the last.
>
> .  .  .
>
> Giving the attorney control of trial management matters is a practical necessity. The adversary process could not function effectively if every tactical decision required client approval. . . . To hold that every instance of waiver requires the personal consent of the client himself or herself would be impractical.

<u>Gonzales</u>, 533 U.S. at 248-250 (internal quotations and citations omitted)

While recognizing that some basic trial choices are so important that an attorney must seek the client's consent in order to waive the right, *e.g.*, whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal, the Court held that the decision to have a district judge preside over jury selection is a "tactical decision" rather than a "fundamental choice," and therefore may be made by a defendant's attorney, even without the defendant's express consent. *Id.* at 253.

In the instant action, Petitioner voluntarily and knowingly placed his signature on two waiver forms, which stated: "I/We Waive The Presence Of A Judge And Reporter For This Voir Dire." *See* copies of the October 8 and 9, 2002, waiver forms, attached as Commw. Ex. 45, ECF No. 18-10, pp. 39-40. These waivers were also signed by the assistant district attorney and defense counsel. In its review of this claim, the trial court held as follows.

> The Defendant's first allegation is that his right to due process was violated because a judge was not present during the jury selection process, a court reporter was not present at the jury selection process, and the jury selection was not open to the public. The Defendant has not shown, nor even argued, that he was prejudiced by the lack of the foregoing. It is customary in this county not to have a judge or a court reporter present during jury selection in non-capital cases. However, if a request is made for the presence of either a judge or a court reporter, that request is routinely granted, pursuant to Pa.R. Crim.P. 631A, which states that a judge is required to be present unless waived by both the Commonwealth and the defense. Thus, if the Defendant had requested the presence of a judge or a court reporter, which he did not do, the Court would have granted his request and been present, with a reporter, for the jury selection process. The Defendant's failure to make the proper request is presumed to be a waiver pursuant to the Rule. As for the argument that the selection process was not open to the public, the Court is not aware that such is true. If a citizen was interested in observing the jury selection process, the Court is not aware that he/she would be prohibited from doing so and the Defendant has not established that such is the case. Accordingly, the Court finds no violation of selection process in these claims.

ECF No. 17-2, pp. 30-31.

A federal court must keep in mind the standard of review to be applied to allegations of trial error. In this regard, criminal defendants in this country are entitled to a fair, but not a perfect, trial. "[G]iven the myriad safeguards provided to assure a fair trial, and taking into account the reality of the human fallibility of the participants, there can be no such thing as an error-free, perfect trial," and the Constitution does not demand one. United States v. Hasting, 461 U.S. 499, 508 (1983) (internal citations omitted). This focus on fairness, rather than on perfection, protects society from individuals who have been duly and fairly convicted of crimes, thereby promoting "public respect for the criminal process." Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986).

A claim that one was denied "due process" is a claim that one was denied "fundamental fairness." See Riggins v. Nevada, 504 U.S. 127, 149 (1992)("We have said that 'the Due Process Clause guarantees the fundamental elements of fairness in a criminal trial'"); Lisenba v. California, 314 U.S. 219, 236 (1941) ("The aim of the requirement of due process is . . . to prevent fundamental unfairness"); Collins v. Scully, 755 F.2d 16, 18 (2d Cir. 1985) ("In order to prevail on a claim that an . . . error deprived the defendant of due process under the Fourteenth Amendment he must show that the error was so pervasive as to have denied him a fundamentally fair trial"). Because the guideposts for decision making under the rubric of due process are lacking, the Supreme Court has cautioned that:

> [i]n the field of criminal law, we have defined the category of infractions that violate 'fundamental fairness' very narrowly based on the recognition that, beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation. The Bill of Rights speaks in explicit terms to many aspects of criminal procedure, and the expansion of those constitutional guarantees under the open-ended rubric of the Due Process Clause invites undue interference with both considered legislative judgments and the careful balance that the Constitution strikes between liberty and order.

<u>Medina v. California</u>, 505 U.S. 437, 443 (1992) (internal quotations and citations omitted).

> Judges are not free, in defining 'due process,' to impose on law enforcement officials their personal and private notions of fairness and to disregard the limits that bind judges in their judicial function. They are to determine only whether the action complained of violates those fundamental conceptions of justice which lie at the base of our civil and political institutions, and which define the community's sense of fair play and decency.

<u>Dowling v. United States</u>, 493 U.S. at 353 (1990) (internal quotation and citations omitted).

A trial is fundamentally unfair if there is a reasonable probability that the verdict might have been different had the trial been properly conducted. <u>Foy v. Donnelly</u>, 959 F.2d 1307, 1317 (5th Cir. 1992) (internal quotation marks omitted). Where the evidence of guilt is so strong that there is no reasonable probability that the verdict might have been different, errors, if any were committed, could not deny the defendant fundamental fairness. *See, e.g.*, <u>United States v. Copple</u>, 24 F.3d 535, 547 n. 17 (3d Cir.1994) ("To the extent any of the incidents constituted error, we believe that in light of the strong evidence of guilt, the errors were harmless and did not deprive Copple of a fundamentally fair trial."). Here, given the overwhelming evidence of Petitioner's guilt, including the eyewitness testimony of the victim and his girlfriend, and the police officers who arrested Petitioner following a high speed chase and the discovery of the stolen items, Petitioner has not established that there was a reasonable probability that the verdict might have been different had the trial judge been present during jury selection. Accordingly, this issue affords Petitioner no relief.

Petitioner further argues that his procedural rights were violated when the trial judge did not conduct a colloquy in allowing him to waive his right to the presence of a judge and a recorded transcript during his jury selection under Pa. R. Crim. P. 631(A), which provides as follows.

> (A) *Voir dire* of prospective trial jurors and prospective alternate jurors shall be conducted, and the jurors shall be selected, in the presence of a judge, unless the judge's presence is waived by the

attorney for the Commonwealth, the defense attorney, and the defendant, with the judge's consent.

Petitioner misunderstands his due process rights. " '[I]t is well established that a state court's misapplication of its own law does not generally raise a constitutional claim. The federal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension.' " Johnson v. Rosemeyer, 117 F.3d 104, 109 (3d Cir. 1997) (quoting Geschwendt v. Ryan, 967 F.2d 877, 888-89 (3d Cir. 1992) (*en banc*)) (alteration and emphasis added). However, this does not foreclose the possibility that, in the rare case, "a state court's misapplication of its own law" may itself result in a "wrong [ ] of constitutional dimension." In other words, a state court's misapplication of its own law, in and of itself, cannot be corrected by a federal court. However, when that misapplication has the effect of depriving a person of life, liberty, or property without due process of law in violation of the Fourteenth Amendment, the resulting federal constitutional error can be corrected by a federal habeas court. *See* Gilmore v. Taylor, 508 U.S. 333, 348-49 (1993) (O'Connor, J., concurring in the judgment). On the other hand, "errors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause." Johnson, 117 F.3d at 110.

It is notable that the Pennsylvania Superior Court has held that, where a defendant, in consultation with counsel, waives his right to have a judge present during *voir dire*, neither the statute nor any case law requires that the defendant's waiver be knowing, voluntary, and intelligent or confirmed by an on-the-record oral colloquy. *See* Commonwealth v. Fitzgerald, 979 A.2d 908, 912 (2009). Petitioner has failed to demonstrate that Pennsylvania law in this regard is in violation of the United States Constitution such as to entitle him to habeas corpus relief.

Petitioner further complains that the record does not reflect that the judge specifically consented to the waiver as required by Rule 631(A).  However, there is nothing in the rule that requires that the judge specifically make his or her consent a part of the record.  More importantly, Petitioner has failed to show that such a requirement is constitutionally required. Consequently, Petitioner is not entitled to habeas corpus relief as to his first claim.

### D. Ineffective Assistance of Counsel

Petitioner also asserts that his trial counsel was ineffective for failing to object to a judge-less, recordless jury selection hearing going forward absent Petitioner's voluntary, knowing and intelligent waiver.  The Supreme Court has formulated a two-part test for determining whether counsel rendered constitutionally ineffective assistance:  1) counsel's performance was unreasonable; and 2) counsel's unreasonable performance actually prejudiced the defense.  Strickland v. Washington, 466 U.S. 668, 687 (1984)).  To determine whether counsel performed below the level expected from a reasonably competent attorney, it is necessary to judge counsel's challenged conduct on the facts of the particular case, viewed at the time of counsel's conduct.  Strickland, 466 U.S. at 690.  A petitioner who claims that he or she was denied effective assistance of counsel carries the burden of proof.  United States v. Cronic, 466 U.S. 648, 658 (1984).

The first prong of the Strickland test requires a defendant to establish that his attorney's representation fell below an objective standard of reasonableness by committing errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment.  Strickland, 466 U.S. at 688.  A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the totality of the circumstances, the challenged action "might be considered sound trial strategy."  Id. at 689.  The question is not whether the defense was free from errors of

judgement, but whether counsel exercised the customary skill and knowledge that normally prevailed at the time and place.  *Id*.

The second prong requires a defendant to demonstrate that counsel's errors deprived him of a fair trial and the result was unfair or unreliable.  Strickland, 466 U.S. at 689.  To prove prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  Strickland, 466 U.S. at 694 (emphasis added).  A "reasonable probability" is one that is sufficient to undermine confidence in the outcome. *Id*.

Petitioner raised this claim in his PCRA proceeding where the Superior Court found that trial counsel was not ineffective.

> The following facts are relevant to our disposition of this issue.  At some point prior to trial, Appellant executed a document waiving his right to have a judge and stenographer present during *voir dire*.  This practice is expressly permitted under Pa.R.Crim.P. 631(A).  Upon viewing the pool of prospective jurors, Appellant's counsel asked the trial court for a new jury panel because the existing one was not indicative of the population of Allegheny County. Following argument, the court denied the motion, and Appellant and his co-defendant ultimately obtained a jury that did not contain any African -Americans.  As a result, both attorneys renewed their previous objection to the composition of the jury pool, and the following exchange occurred.

>> [Co-defendant's counsel]: Yesterday, we presented to the Court a joint defense motion relative to the selection of the jury panel.  We received a new panel to finish the selection today.  We would like to renew the objection that we had yesterday relevant to the composition of the jury panel. . . .

>> . . .

>> I think there were two African-Americans in our panel.  One was so far back we never got to him. Additionally, as a follow-up, the one African

American on the jury panel was Juror 5. I believe her name was . . . Marva Sharpe and the Commonwealth used one of their challenges to strike that juror. And we would aver that the Commonwealth has not expressed a race-neutral purpose for challenging that juror.

[The prosecutor]: Juror number 5 in the panel was Marva Sharpe. She filled out the questionnaire that is required of all jurors contained in Rule 632 of the Rules of Criminal Procedure. In that questionnaire, I recall her having checked yes to question number 3, which is, do you have any religious, moral or ethical beliefs that would prevent you from sitting in judgement on a criminal case and rendering a fair judgment. When she was questioned by defense counsel and myself as to her yes response, she indicated to myself and the other defense counsel that she did, in fact, have problems with sitting in judgment of people based on her life's experiences, specifically living in the neighborhood she does. It is my understanding that she's from Homestead.

She also indicated that, based upon her interactions with certain police officers, specifically officers from McKeesport Police Department, that she did not believe that she could server as a juror. That is why she answered yes to that question.

Ms. Sharpe also answered yes to question number 9, which is that she would be less likely to believe the testimony of a police officer or law enforcement officer because of his or her job. Again, she indicated that she's had apparently [sic] experiences in the past with police officers, specifically officers from McKeesport.

Based upon that, Your Honor, I struck her from the panel. I used one of my peremptory challenges because I did not believe that she could be a fair and unbiased juror and she had certain beliefs that prevented her from sitting in judgement in a criminal case and rendering a fair verdict.

[Appellant's counsel]: Well, I had the opportunity to discuss with her the response to question 9, and I asked her if under instruction of the Court whether or not she could accept the testimony of a police officer to the same level that she would accept the testimony of anyone else. And she had no problem with saying --she responded, yes, that she could with the judge's instructions.

[Co-defendant's counsel]: May I just put my two cents' worth in. The Commonwealth's argument misses the point. The point of getting African-American or black citizens on jury panels is that they have different experiences with members of the criminal justice system.

[The Court]: No, I think you are missing the point. I will find that, based on the record in front of us, that the Commonwealth properly used their peremptory challenge, and the record will reflect both lawyers' objections to that decision.

Herein, Appellant maintains that he executed the waiver form at counsel's direction and that he was prejudiced by that waiver because if a judge and stenographer had been present during jury *voir dire*, the trial court would have been better able to assess the circumstances surrounding the only African-American juror being stricken by the prosecution (and the only one on the panel), to determine whether or not it was race motivated. In leveling this claim, Appellant repeatedly avers that counsel should have requested an on-the-record colloquy to ensure that the waiver was made knowingly, voluntarily, and intelligently.

Upon review, we agree with the PCRA court's assessment that this claim is patently meritless. The record establishes that both defense attorneys were permitted to argue their position before the jury was sworn, and the trial court had sufficient information to rule on the propriety of the prosecutor's actions during *voir dire*. This was not a complicated issue. The defense questioned the prosecutor's motive for striking juror number 5, and the prosecutor offered a race-neutral explanation that no one questioned; in fact, Appellant's counsel admitted that Ms. Sharpe initially indicated that she would be less likely to believe the testimony of a law enforcement officer based on prior dealings with the McKeesport police force. Thus, as the PCRA court accurately observed,

> Appellant is not entitled to relief because he cannot establish that he was prejudiced by the absence of a judge and stenographer during *voir dire*. Furthermore, we will not fault an attorney for failing to request an on-the-record colloquy in conjunction with the execution of a Pa.R.Crim.P. 631 waiver form where, as here, the petitioner does not allege any facts that would support an inference that the waiver was not knowing, voluntary, and intelligent. Accordingly, we will not remand for an evidentiary hearing.

ECF No. 18, Ex. 38, pp. 3-7 (internal citations omitted).

Petitioner has not demonstrated that this determination is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to habeas corpus relief with respect to this claim.

### E. Certificate of Appealability

Section 2253 generally governs appeals from district court orders regarding habeas petitions. Section 2253(c)(1)(A) provides that an appeal may not be taken from a final order in a habeas proceeding in which the detention arises out of process issued by a State court unless a certificate of appealability has been issued. A certificate of appealability should be issued only when a petitioner has made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2254(c)(2). Here, the record fails to show a violation of Petitioner's constitutional rights. Accordingly, a certificate of appealability will be denied.

**AND NOW**, this 8th day of September, 2010;

**IT IS HEREBY ORDERED** that the Petition for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court mark this case **CLOSED**.

**AND IT IS FURTHER ORDERED** that pursuant to Rule 4(a)(1) of the Federal Rules of

Appellate Procedure, Petitioner has thirty (30) days to file a notice of appeal as provided by Rule

3 of the Federal Rules of Appellate Procedure.

_____
Lisa Pupo Lenihan
United States Magistrate Judge

cc:    Allen O'Neil Fitzgerald
       FF-3157
       SCI Dallas
       1000 Follies Road
       Dallas, PA 18612